UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FREE LIBERTARIAN PARTY, INC., a New York
not-for-profit corporation doing business as the Libertarian
Party of New York and acting as an independent body
under the name of the Libertarian Party; and WILLIAM
REDPATH, a United States citizen and Virginia resident,

                      Plaintiffs,

   - against -

ANDREW J. SPANO, GREGORY P. PETERSON,
PETER S. KOSINSKI, and DOUGLAS A. KELLNER, in
their official capacities as Commissioners of the New
York State Board of Elections,

                      Defendants.
------------------------------------------------------------------X

Civil Action No. 16-cv-3054
(SJ) (SMG)

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Gary L. Donoyan
The Law Office of Gary L. Donoyan
565 Plandome Road, #209
Manhasset, New York 11030
(516) 312-8782
gdonoyan@garydonoyanlaw.com

Attorneys for Plaintiffs

February 26, 2018

## PRELIMINARY STATEMENT

Plaintiffs FREE LIBERTARIAN PARTY, INC. ("LPNY") and WILLIAM REDPATH ("Redpath") submit this memorandum of law in support of their motion for summary judgment, and in opposition to the cross-motion of defendants ANDREW J. SPANO, GREGORY P. PETERSON, PETER S. KOSINSKI, and DOUGLAS A. KELLNER, the Commissioners of the New York State Board of Elections sued in their official capacities ("Defendants") for summary judgment.[1] Plaintiffs seek the following relief: (1) a declaratory judgment including, but not limited to declaring New York Election Law §6-140(1)(b) unconstitutional to the extent that it prohibits United States citizens who satisfy the requirements to register to vote in New York, as well as United States citizens who would satisfy those requirements if they were New York residents, from serving as witnesses to independent nominating petitions, and (2) a permanent injunction enjoining Defendants from enforcing New York Election Law §6-140(1)(b) to the extent that it prohibits United States citizens who satisfy the requirements to register to vote in New York, as well as United States citizens who would satisfy those requirements if they were New York residents, from serving as witnesses to independent nominating petitions.

For the reasons set forth below, and those previously set forth in Plaintiffs' moving brief,

---

[1] The interest of LPNY was previously represented by its Chair, previous plaintiff Mark Glogowski, who together with LPNY's 2016 candidate for U.S. Senate, previous plaintiff Alex Merced, and plaintiff Redpath, initiated a motion for summary judgment, and opposed defendants' cross-motion. The first two of those individuals have been dropped as parties as of the filing of the Amended Complaint on December 20, 2018. Per agreement of the parties and order of the court, the papers and proceedings on that motion and cross-motion will be considered as part of the instant motion and cross-motion, now deemed made (and opposed, as the case may be) by plaintiffs LPNY and Redpath.

1

filed September 11, 2017 ("Plaintiffs' Memo"), and Plaintiff's reply brief, filed November 3, 2017 ("Plaintiffs' Reply Memo"), Plaintiffs are entitled to summary judgment. The registered voter witness requirement in Election Law §6-140(1)(b) bars non-residents and non-voters from circulating independent nominating petitions, if "circulating" is defined to include "witnessing," as the laws and decisions of many states do. The reason the Second Circuit in <u>Lerman v. N.Y.C. Bd. of Elections</u> (232 F.3d 135 (2nd Cir. 2000)) and many other cases do not distinguish between "circulating" petitions and "authenticating" or "witnessing" petition signatures is, the roles are not in fact very different. It is inefficient and burdensome to use more than one person to obtain signatures on one petition sheet, and there is almost never a good reason to do so unless it is required by law. The cases recognize that in practice they are essentially the same task, and they are subject to the same analysis. The fact that the LPNY and its candidates are compelled to use circulators who are not also witnesses, at all, is a hindrance and a burden on their Constitutional free speech rights, and Plaintiffs have established that they are entitled to summary judgment on their claims for a declaratory judgment and permanent injunction.

## COUNTERSTATEMENT OF FACTS

New York's statewide signature requirement (15,000 required) is lower, in absolute numbers, than that of only nine other states (California, 178,039 required (Elec. Code 8400); North Carolina, 89,366 required (§163-96(2)); Texas, 47,086 required (Elec. Code 181.005); Michigan, 30,000 required (§168.544(f)); Indiana, 26,700 required (§3-8-6-3); Illinois, 25,000 required (10 ILCS 5/10-2); Oklahoma, 24,745 required (Title 26, sec. 1-108); Arizona,

20,119 required (§16-802); Oregon, 17,893 required (Title 23, sec. 249.735)), and "significantly" lower than fewer than that. The burden of New York's statewide signature requirement on candidates and their supporters is average, not relatively low, and is more onerous, in absolute numbers, than that of 40 other states (80% of them). *Cf.* Declaration of Robert A. Brehm, dated Feb. 14, 2018 ("Brehm Decl."), ¶¶7, 26.

Election Law §6-140(1)(b) accords a filed petition with a presumption of validity, not "a signature" within that petition. *Cf.* Brehm Decl., ¶8.

Were out-of-state residents permitted to be witnesses, the time to serve and enforce subpoenas would be the same as at present. If the witness provided an incorrect address or resisted coming to court, the procedure would be exactly the same as now regards New York witnesses. *Cf.* Brehm Decl., ¶10.

Plaintiffs do not seek the "abandonment" of the registered voter witness requirement, just its modification so as to comply with the Free Speech Clause of the U.S. Constitution. *Cf.* Brehm Decl., ¶14.

Plaintiffs believe the use of out-of-state professional witnesses <u>and</u> New York volunteers and professionals is more efficient and less costly than using <u>only</u> New York volunteers and professionals, and Defendants have presented no evidence to rebut that claim. *Cf.* Brehm Decl., ¶16.

If enforcement of Election Law §6-140(1)(b) is enjoined, of course there would be a reasonable ability for the boards of elections or those challenging petitions to check on the authenticity of a witness's eligibility to be a witness, his or her address, and even the

witness's existence, so long as the state implements a new registration and database system for petition witnesses, which includes witnesses whether or not they are registered to vote in New York, just as numerous other states do and as previously suggested by Plaintiffs. See Plaintiffs' Reply Memo, pp. 9-10; *cf.* Brehm Decl., ¶21.

With a new procedure and database to include all witnesses constitutionally required to be permitted, as used in many other states, the boards of elections and challengers would have exactly the same ability to check the witness's data as at present, and the "practical ability to authenticate witnesses" will be exactly the same as at present. *Cf.* Brehm Decl., ¶21.

Upon implementation of the suggested procedures and database, eligible out-of-state witnesses will have consented to service of process at a designated New York address, and the incentives of the candidates and witnesses to appear voluntarily, which are present in every case, would be exactly the same with regard to such out-of-state witnesses. *Cf.* Brehm Decl., ¶22.

Defendants can present no evidence that New York has been unable to prosecute any fraudulent witnesses because they were not duly qualified New York voters. Defendants' claim about what "a person who would forge petition signatures" is incentivized to do is not supported with any empirical data whatsoever, only with a mere allegation. Defendants also ignore the safeguards proposed to prevent fraud by a "phantom witness," such as not just removing the presumption of validity but deeming all such signatures invalid, if the witness merely fails to appear when subpoenaed. Brehm Decl., ¶23.

4

Defendants continue to criticize the original complaint in this action, which has been superseded by the Amended Complaint. Brehm Decl., ¶24. Presently, Plaintiffs seek only to expand eligibility to witness such petitions to U.S. citizens who are eligible to register to vote in New York (but who did not), as well as those who would be eligible but for the residency requirement.

"Those who challenge a petition" do not have "the burden to invalidate a signature or witness statement." They have the burden, such as it is, simply to <u>challenge</u>, or object to, a signature or witness statement. Whereupon, the burden to rule on that challenge, and either to validate or invalidate that signature or witness statement, falls upon the state or local board of elections. *Cf.* Brehm Decl., ¶26.

It is incorrect that implementation of the procedures and database proposed by Plaintiffs, and used by many states, would result in an inability efficiently to verify witness identity, eligibility and location, or to ensure that he or she is amenable to subpoena. Any reduction in amenability to prosecution will have a minimal or no actual effect, and would certainly not result in court challenges taking longer to determine. *Cf.* Brehm Decl., ¶26.

## ARGUMENT

### POINT I

### LPNY AND REDPATH EACH HAVE STANDING TO MAINTAIN THIS ACTION BECAUSE EACH HAS A CASE OF ACTUAL CONTROVERSY.

A. **Redpath Has Standing.**

Election Law §6-140(1)(b) burdens Redpath's interactive communication during the petition process, and the precedents hold that circulating, without witnessing, petitions is not

5

an acceptable alternative under the U.S. Constitution. *See* Meyer v. Grant, 486 U.S. 414 (1998); Lerman v. N.Y.C. Bd. Of Elections, 232 F.3d 135 (2nd Cir. 2000); Buckley v. Am. Const'l Law Found., 525 U.S. 182 (1999); Nader v. Brewer, 531 F.3d 1028 (9th Cir. 2008); Yes on Term Limits v. Savage, 550 F.3d 1023 (10th Cir. 2008); Green Party of Pa. v. Aichele, 89 F.Supp.3d 723 (E.D.Pa. 2015); Libertarian Party of Virginia v. Judd, 718 F.3d 308 (4th Cir. 2013); Nader v. Blackwell, 545 F.3d 459 (6th Cir. 2008); Krislov v. Rednour, 226 F.3d 851 (7th Cir. 2000); Citizens in Charge v. Gale, 810 F.Supp.2d 916 (D.Neb. 2011); and Darien v. Ysursa, 711 F.Supp.2d 1215 (D.Idaho 2010); as cited and discussed in Plaintiffs' Memo, pp. 15-19.

**B. LPNY Has Standing.**

The U.S. Supreme Court, in Lujan v. Defenders of Wildlife (504 U.S. 555 (1992), actually held as follows (*cf.* Defendants' Supplemental Memorandum in Further Support of Their Cross-Motion for Summary Judgment, dated Feb. 14, 2018 ("Defendants' Sur-Reply Memo"), p. 5):

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560-61, citations omitted. The actual text is somewhat less prejudicial to

6

Plaintiffs' position, than Defendants' characterization.

Plaintiffs have averred that some candidates have been refused ballot access as a "direct and proximate result" of Defendants' enforcement of Election Law §6-140(1)(b), and some candidates may be denied such access in 2018 as well, in support of their claim for summary judgment, and those averments, even if "unproven," are sufficient. Lujan, 504 U.S. at 561.

There is no need for Plaintiffs to "produce evidence" that Election Law §6-140(1)(b) creates a monopoly for New York professional witnesses (see Defendants' Sur-Reply Memo, p. 6); that is a matter of law, not of fact, as non-New York professional witnesses may not legally be hired as "witnesses" (though they may be and have been hired as circulators accompanying New York witnesses). By alleging and averring that out-of-state professional witnesses are more productive, on average, than New York witnesses, and showing that they would retain more such professionals but for that law, Plaintiffs necessarily show that the enforcement of Election Law §6-140(1)(b) effectively reduces the average quality of the witnesses. And the conclusion that the enforcement of Election Law §6-140(1)(b) makes it more difficult for the LPNY to disseminate its political views, is simply the logical conclusion to be drawn from the admissible evidence provided by the sworn declarations and deposition testimony of Plaintiffs and their agents.

LPNY, by its Chair and previous plaintiff Mark Glogowski, alleges and avers with sworn declarations that LPNY suffers from greater uncertainty and must allocate more time and effort to fundraising due to Defendants' enforcement of Election Law §6-140(1)(b). Those efforts have most certainly caused harm to LPNY and its candidates, harm which can and has

7

been shown to be traced directly to that law. The additional burdens on LPNY caused by Defendants' enforcement of Election Law §6-140(1)(b) are not narrowly tailored to avoid unconstitutional injury to Plaintiffs' free speech rights.

### POINT II
### ELECTION LAW §6-140(1)(b) UNCONSTITUTIONALLY BURDENS PLAINTIFFS' FIRST AMENDMENT RIGHTS BECAUSE IT IS NOT NARROWLY TAILORED TO SERVE A COMPELLING STATE INTEREST.

Election Law §6-140(1)(b) burdens U.S. citizens who satisfy the requirements to register to vote in New York (but who are not so registered), and U.S. citizens who would satisfy those requirements if they were New York residents, by unconstitutionally preventing them from serving as witnesses to independent nominating petitions. That requirement reduces their ability to work efficiently to gather signatures, it requires greater coordination with candidates and their campaigns, and it therefore reduces their opportunities to engage in that form of protected speech.

The text of Election Law §6-140(1)(b) itself makes it perfectly clear that only New York registered voters are legally permitted to witness signatures. Therefore, it is also perfectly clear that to the extent LPNY and its candidates wish to use the services of non-New York registered voters <u>as witnesses</u>, they are harmed by its enforcement.

The U.S Supreme Court in <u>Washington State Grange v. Washington State Republican Party</u> (552 U.S. 442 (2008)) did not hold that facial challenges are contrary to principles of judicial restraint. *Cf.* Defendants' Sur-Reply Memo, p. 7. It actually held only that they run "contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor

8

'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" 552 U.S. at 450, citations omitted. Those principles would not be violated by a ruling for Plaintiffs in this case.

Plaintiffs have suffered through numerous election cycles when Election Law §6-140(1)(b) was enforced against them, causing them harm. Plaintiffs can safely be expected to suffer harm in the future if that enforcement continues. The evidence of harm proffered by Plaintiffs is not speculative, it is direct.

In Lerman, *supra*, as here, the defendants "failed to suggest any meaningful relationship between" the restriction on witnesses "and their interest in protecting the integrity of the signature collection process" (232 F.3d at 150), and here, as in Lerman, the statute should be struck down as unconstitutional.

Redpath submits a declaration herewith that substantiates and evidences his claim of injury to his right of free speech. LPNY too has produced substantial evidence of injury caused by Defendants' enforcement of Election Law §6-140(1)(b) in the past, and likely into the future, in violation of its free speech rights, most recently with a new declaration by its Chair, Mark Glogowski. The evidence is clear and overwhelming that Defendants' enforcement of Election Law §6-140(1)(b) has burdened both Plaintiffs' interactive communication during every petition period for several past decades and will continue to in the future, in violation of their free speech rights under the U.S. Constitution.

9

## CONCLUSION

For the reasons stated, summary judgment should be granted to the LPNY and Redpath, for (1) a declaratory judgment declaring New York Election Law §6-140(1)(b) unconstitutional to the extent that it prohibits United States citizens who satisfy the requirements to register to vote in New York, as well as United States citizens who would satisfy those requirements if they were New York residents, from serving as witnesses to independent nominating petitions, and (2) a permanent injunction enjoining Defendants from enforcing New York Election Law §6-140(1)(b) to the extent that it prohibits United States citizens who satisfy the requirements to register to vote in New York, as well as United States citizens who would satisfy those requirements if they were New York residents, from serving as witnesses to independent nominating petitions, and such other and further relief as this Court deems just.

Dated:   February 26, 2018

Respectfully submitted,

GARY L. DONOYAN (GD-7542)
The Law Office of Gary L. Donoyan
565 Plandome Road, #209
Manhasset, New York   11030
(516) 312-8782
gdonoyan@garydonoyanlaw.com

Attorneys for Plaintiffs

10